# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2021

Lyle W. Cayce
Clerk

No. 19-41049
Summary Calendar

United States of America,

*Plaintiff—Appellee*,

*versus*

John Perez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:18-CR-1336-7

Before King, Smith, and Wilson, *Circuit Judges*.

Per Curiam:[*]

John Perez appeals his below-guidelines sentence of 156 months in prison, imposed following his guilty plea to conspiracy to possess with intent to distribute a synthetic cannabinoid mixture and substance containing a detectable amount of a Schedule 1 controlled substance, 21 U.S.C.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-41049

§§ 841(a)(1), (b)(1)(C), 846.  Perez challenges the district court's attribution to him of 10,000 to 30,000 kilograms of converted drug weight, the denial of a minor role adjustment, and the application of sentencing enhancements for distributing a controlled substance through mass-marketing by means of an interactive computer service and for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.

We engage in a bifurcated review of a sentence imposed by a district court.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  We first consider whether the district court committed a "'significant procedural error,' such as miscalculating the advisory Guidelines range."  *United States v. Odom*, 694 F.3d 544, 547 (5th Cir. 2012) (citation omitted).  If there is no procedural error, or if any such error is harmless, we "may proceed to the second step and review the substantive reasonableness of the sentence imposed for an abuse of discretion."  *Id.*  For preserved errors, we review a district court's interpretation and application of the Guidelines de novo, and the factual findings for clear error.  *See United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013).

As to the drug weight attributed to Perez, from his own activities and relevant conduct, the unrebutted evidence from the presentence report and the contested sentencing hearing indicates that the district court plausibly concluded that the preponderance of the evidence showed that the offense involved, at the very least, 10,000 kilograms of converted drug weight.  *See United States v. Arayatanon*, 980 F.3d 444, 451 (5th Cir. 2020); *United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013); U.S.S.G. § 2D1.1(c)(3); § 2D1.1 comment. (n.8(D)).  Even assuming Perez preserved his challenge regarding what quantity was foreseeable to him, his arguments are unavailing.  The district court's attribution of a converted drug weight of between 10,000 and 30,000 kilograms to Perez was plausible in light of the unrebutted evidence that Perez was fully engaged in the activities of the conspiracy, from

receiving packages of botanical material, to the pick up and delivery of other ingredients, to selling the synthetic cannabinoid in person and online, and to regular conversations with his co-conspirators regarding the manufacture and sale of the finished product. *See* U.S.S.G. § B1.3(a)(1); § 2D1.1(c)(3); *United States v. Suchowolski*, 838 F.3d 530, 532 (5th Cir. 2016); *Zuniga*, 720 F.3d at 590; *Windless*, 719 F.3d at 420.

The same evidence supports the district court's plausible conclusion that Perez failed to show he qualified for a mitigating role adjustment. *See* U.S.S.G. § 3B1.2; *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016); *United States v. Gomez-Valle*, 828 F.3d 324, 327 (5th Cir. 2016). The testimony adduced at the hearing and the facts set out in the presentence report show Perez to have been regularly involved in almost all aspects of the enterprise, thus belying his claims that he lacked an understanding of the scope and structure of the enterprise or the activities of the others in the group, and so was less culpable than the other participants in the conspiracy. *See* § 3B1.2, comment. (n.4); *United States v. Bello-Sanchez*, 872 F.3d 260, 264 (5th Cir. 2017). Perez shows no clear error in the denial of the minor role adjustment. *Gomez-Valle*, 828 F.3d at 327.

As to the U.S.S.G. § 2D1.1(b)(7) enhancement for mass marketing through an interactive computer service, Perez argues that he was only involved in the online sales early on, did so in a limited manner, primarily responding to requests, and did so in a private social media group rather than on a public website. Perez had 450 friends on his Facebook account and was a member of a group associated with criminal activity. In his posts, Perez referenced "bags," a common term for the synthetic cannabinoid product, 36 times. Investigators determined that Perez posted early in the conspiracy that he was selling "50 bags for 1300 bucks," and that Perez's co-conspirator, while in custody, referred online buyers to Perez. Additionally, one of Perez's co-conspirators had 3,100 Facebook friends while another had 1,100

friends, and both advertised that they had synthetic cannabinoid for sale. A third co-conspirator had only 688 friends on Facebook but mentioned or discussed bags 528 times in various groups over the course of the conspiracy. Perez fails to show the district court erred in concluding that the preponderance of the evidence showed that the members of the conspiracy, including Perez, used Facebook and Facebook Messenger to solicit a large number of persons to purchase synthetic cannabinoid from them. *See* § 2D1.1(b)(7) comment. (n.13); *United States v. Mauskar*, 557 F.3d 219, 232 (5th Cir. 2009); *United States v. Martinez*, 823 F. App'x 284, 285 (5th Cir. 2020).

Perez likewise fails to show that the district court clearly erred in applying the § 2D1.1(b)(12) enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." § 2D1.1(b)(12); *see United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015). Perez focuses on what the Government did not show, but he did not rebut the Government's evidence that one of several large packages of the materials to make the synthetic cannabinoid was delivered in early May 2018 to an address on Dinn Street, Perez's residence at the time and when the PSR was written; that Perez's co-conspirators paid Perez with synthetic cannabinoid for allowing them to use his address for the delivery; that one co-conspirator advised another to prepare Perez to secure the contents of the package; and that investigators observed heavy pedestrian and vehicle traffic at the home, consistent with distribution of narcotics from the home. *See Alaniz*, 726 F.3d at 619. The district court plausibly concluded that the preponderance of the evidence showed that Perez maintained the Dinn Street residence for the manufacture, including storage of the ingredients, and distribution of narcotics. *See* § 2D1.1(b)(12); *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017); *Haines*, 803 F.3d 713, 744.

The judgment of the district court is AFFIRMED.